**FOR PUBLICATION\***

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFFREY L. CLEMENS,
                         *Petitioner,*

v.

UNITED STATES DISTRICT
COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA,
                         *Respondent,*

UNITED STATES OF AMERICA,
            *Real Party in Interest.*

No. 05-75631

D.C. No.
CR-05-00548-SJO

OPINION

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Submitted November 1, 2005\*\*
Pasadena, California

Filed November 7, 2005

Before: Thomas G. Nelson, Sidney R. Thomas, and
Richard C. Tallman, Circuit Judges.

Per Curiam Opinion

---

\*The panel has determined that this disposition warrants publication, but that referring the case to an oral argument merits panel is not possible because the case involves exigent circumstances arising from an emergency motion and is a highly time-limited proceeding that cannot be resolved by reference to a merits panel. *See* G.O. 6.5(b)(i).

\*\*This panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

**COUNSEL**

Shereen J. Charlick and Steven L. Barth, Federal Defenders of San Diego, Inc., San Diego, California, for the petitioner.

Robert J. Keenan and Wayne R. Gross, Assistant United States Attorneys, Santa Ana, California, for real party in interest United States of America.

**OPINION**

PER CURIAM:

Jeffrey Clemens seeks a writ of mandamus from the district court's denial of his motion to disqualify all of the district court judges in the Central District of California from presiding over his criminal trial. We deny the petition for a writ of mandamus.

I

Clemens is charged in a four-count indictment with making threats with intent to extort, assault, murder, or to inflict harm upon three federal district court judges from the Central District of California, in violation of 18 U.S.C. §§ 876 and 115(a)(1)(B). The threats were made in connection with *pro se* suits Clemens had filed in the Central District of California. He was arraigned July 12, 2005. Trial is set for November

8, 2005, before Hon. S. James Otero, a district judge in the Central District of California.

Clemens filed a motion for an order, pursuant to 28 U.S.C. § 455(a), disqualifying all of the judges from the Central District of California from presiding over his criminal trial. Upon request of Judge Otero, the Chief Judge of the Ninth Circuit Court of Appeals ordered that the case be transferred temporarily to the Hon. James C. Mahan, United States District Judge in and for the District of Nevada, for the purpose of ruling on the disqualification motion and other motions filed by Clemens.

Judge Mahan granted Clemens' motion for the appointment of new defense counsel from outside the Central District of California and ordered the Federal Defenders of San Diego, Inc., to select new counsel. He denied Clemens' motion to disqualify the United States Attorney for the Central District of California. He also denied Clemens' motion to disqualify all of the district judges in the Central District of California. Following these orders, Clemens filed a petition for a writ of mandamus requiring the disqualification of all of the district judges in the Central District of California.

## II

[1] "The writ of mandamus is an 'extraordinary' remedy limited to 'extraordinary' causes." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1146 (9th Cir. 2005) (citing *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 377, 380 (2004)). "In order to gain the benefit of the writ, the party must have no other recourse; the right to the writ must be 'clear and indisputable'; and the appellate court must be satisfied that the writ is appropriate under the circumstances." *Id.*

In our Circuit, we have applied a five-factor test to determine whether mandamus relief is warranted, asking whether:

(1)  The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires.

(2)  The petitioner will be damaged or prejudiced in a way not correctable on appeal.

(3)  The district court's order is clearly erroneous as a matter of law.

(4)  The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5)  The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. United States Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977) (internal citations omitted).

In analyzing the *Bauman* factors, we note that "[n]ot every factor need be present at once; indeed, the fourth and fifth will rarely be present at the same time." *Burlington N.*, 408 F.3d. at 1148. "However, the absence of the third factor, clear error, is dispositive." *Id.* (citing *Gallo v. U.S. Dist. Court*, 349 F.3d 1169, 1177 (9th Cir. 2003), *cert. denied*, 541 U.S. 1073 (2004)).

## III

There was no clear error in the district judge's decision denying the disqualification motion. Indeed, the district judge's decision was entirely correct.

### A

**[2]** Clemens' disqualification motion was made pursuant to 28 U.S.C. § 455(a), which provides simply that "[a]ny justice,

judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In analyzing § 455(a) disqualification motions, we employ an objective test: " 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.' " *Herrington v. County of Sonoma*, 834 F.2d 1488, 1502 (9th Cir. 1988) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)). "Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990). The "reasonable person" in this context means a "well-informed, thoughtful observer," as opposed to a "hypersensitive or unduly suspicious person." *Id.* at 386.

In determining whether disqualification is warranted under § 455(a), we also apply the general rule that questions about a judge's impartiality must stem from "extrajudicial" factors, *Liteky v. United States*, 510 U.S. 540, 554 (1994), that is, from sources other than the judicial proceeding at hand. *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 885 (9th Cir. 1991) (citing *Toth v. TransWorld Airlines*, 862 F.2d 1381, 1388 (9th Cir. 1988)).

We are also mindful "that section 455(a) claims are fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999). The Tenth Circuit has compiled a helpful, nonexhaustive list of various matters not ordinarily sufficient to require a § 455(a) recusal. These include:

(1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual

matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.

*Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (citing *United States v. Cooley*, 1 F.3d 985, 996 (10th Cir. 1993)). As the Tenth Circuit also rightly observed, a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Id.* at 351.

B

**[3]** With these guiding principles at hand, we turn to the circumstances involved in this case. Clemens seeks disqualification of all the district judges in the Central District of California because of threats he allegedly made on the life and health of three judges in the district. Although we have not considered the question, other circuits have held that recusal of an individual judge pursuant to § 455(a) may be required when the judge himself has been the subject of a personal threat, unless the threat was motivated by a desire to recuse the judge. *See, e.g., United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003); *United States v. Greenspan*, 26 F.3d 1001, 1006-07 (10th Cir. 1994). For example, in *Nichols*, the Tenth

Circuit found recusal warranted under § 455(a) because of "extraordinary" circumstances: the defendant was charged with bombing the Murrah Federal Building in Oklahoma City and the judge's personal chambers had been damaged by the explosion. 71 F.3d at 352. The Tenth Circuit elected to draw a replacement judge "from a very large pool of judges outside the State of Oklahoma," but it did not hold that the entire bench of the District of Oklahoma was subject to mandatory disqualification pursuant to § 455(a). *Id.* Similarly, the Seventh Circuit has held that recusal of all of the district court judges in a district was required because the defendant had been accused of planning to bomb the building in which all of the district bench had chambers. *In re Nettles*, 394 F.3d 1001, 1002-03 (7th Cir. 2005).

**[4]** The circumstances of these cases, to the extent they are relevant here, are far different from the situation in the case at hand. Where other circuits have required recusal, the recused judge was an intended victim of the alleged crime. In *Nettles*, all the judges of the district in question could have been fairly viewed as intended victims of the charged offense. There is no such allegation in this case, either toward the assigned judge or the entire bench. Nor could a reasonable person draw an inference of a threat against the entire bench. The government alleges only that the defendant made personal threats against three individual judges in the district, not to any other judge.

**[5]** Nor could any reasonable observer draw the inference that a threat was intended against the entire bench. The Central District of California has three divisions. The Eastern Division comprises the counties of Riverside and San Bernardino. The Western Division comprises the counties of Los Angeles, San Luis Obispo, Santa Barbara, and Ventura. The Southern Division comprises Orange County. 28 U.S.C. § 84. District judges in the Central District have chambers in four separate courthouses. The district judges in Los Angeles sit in two different courthouses. At present, the Central District has

27 authorized district judgeships. 28 U.S.C. § 133. There are currently 34 active and senior district judges in the Central District. No reasonable observer could conclude that a threat against three judges based on their handling of the defendant's *pro se* cases should be construed as a threat against all the judges of the district. Furthermore, the threats that the defendant allegedly made were in no way related to complaints about the Central District as an entity. On the contrary, the threats were aimed at particular judges perceived to have made unfavorable rulings in the defendant's *pro se* cases.

Clemens argues that no judge of the district could preside impartially over his trial, given the nature of the allegations. However, we have previously rejected an attempt to disqualify a judge based on his relationship with the victim. *See United States v. Gordon*, 974 F.2d 1110, 1114 (9th Cir. 1992) (holding that a district judge was not required to recuse himself under § 455(a) in a case involving a Presidential assassination attempt simply because the judge was appointed by the President and the President might be required to testify). Clemens speculates—but does not tender any evidence—about personal relationships among the judges of the Central District that might give rise for a reasonable observer to question the impartiality of the judges. Section 455(a) does not require recusal based on speculation. *Cf. Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (recusal not warranted under § 144 or § 455 based on speculation).

**[6]** Given that mandatory disqualification of a single judge is not warranted simply because of a professional relationship with a victim, it follows *perforce* that disqualification of an entire district is not justified except under highly exceptional circumstances, which are not present here.

## C

**[7]** The district court correctly held that mandatory disqualification of all judges in the Central District of California was

not justified under § 455(a). In the absence of a clear error of law by the district court, we must deny the petition for a writ of mandamus. Given our resolution of this factor, we need not discuss the remaining *Bauman* factors.

## IV

In closing, we regretfully must also observe that we live in a time when threats against federal judges are not uncommon. Many of these actions are made with the intent of altering the outcome of judicial proceedings. Despite these threats to themselves and their colleagues, judges throughout the country continue to administer the law fairly and professionally. We cannot, and will not, presume otherwise. There are occasions, as we have discussed, when a well-informed, thoughtful observer might reasonably question the impartiality of a judge because of threats made against the judge or his or her colleagues. However, we must be especially careful not to allow threats of violence to succeed in altering the normal course of litigation. To do otherwise would be destructive of the independence of the judiciary, which is, as former Chief Justice Rehnquist aptly observed "one of the crown jewels of our system of government."

**PETITION DENIED.**