

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>THOMAS OLIVER,<br>          Debtor. | BAP Nos.  SC-21-1151-SFB<br>             SC-21-1182-SFB<br>         (Related Appeals) |
| THOMAS OLIVER,<br>          Appellant,<br>v. | Bk. No.   20-01053-LA7 |
| | Adv. No. 20-90093-LA |
| UNITED STATES TRUSTEE,<br>          Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Louise Decarl Adler, Bankruptcy Judge, Presiding

Before: SPRAKER, FARIS, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Thomas Oliver voluntarily filed his chapter 7[1] petition in the hopes of

defeating a disputed judgment debt. In his bankruptcy filings, he claimed

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

to have virtually no non-exempt assets available for distribution. But the United States Trustee ("UST") commenced an adversary proceeding against Oliver objecting to his discharge for allegedly transferring assets with the intent to hinder, delay, or defraud creditors within a year of bankruptcy under § 727(a)(2)(A) and for allegedly making false statements under oath under § 727(a)(4). Based on his refusal to cooperate in the discovery process, the bankruptcy court struck Oliver's answer and granted a default judgment denying him a discharge. Oliver appeals both the sanctions order and entry of the default judgment. Additionally, he appeals the denial of his motion to recuse the bankruptcy judge.

Oliver contends that the judgment denying him a chapter 7 discharge is the result of a vast conspiracy perpetrated against him by both state and federal courts as well as the U.S. Department of Justice. This appeal is limited to the bankruptcy court's judgment denying his discharge and the rulings leading to that judgment. Having reviewed the record, we conclude that the bankruptcy court correctly applied the law regarding terminating sanctions, entry of default judgments, and denial of discharge. It also correctly denied Oliver's recusal motion. Nor were any of these rulings the result of clearly erroneous factual findings. We AFFIRM.

**A.    Oliver's bankruptcy filing and the UST's adversary complaint.**

In February 2020, Oliver voluntarily filed his chapter 7 petition. Several months later, the UST filed a complaint objecting to Oliver's discharge under § 727(a)(4)(A) and (a)(2)(A). The UST alleged that Oliver knowingly and fraudulently omitted from his schedules and the Statement of Financial Affairs ("SOFA"): (1) a bank account in his mother's name that he used for his own personal income and expenses; (2) his interest in and right to royalties from a book; and (3) the conveyance of a rental property located in Rhode Island to his mother and the recording of that deed.

In his schedules, all but $200 of his listed assets were claimed as exempt. He did not disclose any ownership interest in real property, bank accounts, or books that he had authored. As for creditors, he listed a single debt; a disputed judgment for $32,913.30 entered in favor of Alyssa Parent D.B.A. Sun Days Tanning. Oliver has stated that the judgment was entered against him by a state court in Massachusetts.

In his Schedule I and his SOFA, Oliver identified a significant amount of rental income, but he did not specify the source of that income. He further indicated that Parent was in the process of domesticating and enforcing her "fraudulent" judgment against the Rhode Island rental

---

[2] We exercise our discretion to take judicial notice of documents filed in Oliver's bankruptcy case and in the related adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

property. As he put it, Parent was "trying to steal" that property. He further stated in his SOFA that he had not owned the Rhode Island property since 2014. The UST alleged in the complaint, however, that Oliver signed the deed, and his signature was acknowledged, on January 31, 2020. The UST further alleged that Oliver's deed to his mother conveying the Rhode Island property was recorded on February 19, 2020, several days before Oliver filed his bankruptcy.

In his response to question 18 of the SOFA, he stated that he had not sold, traded, or otherwise transferred any interest in property within two years of his bankruptcy.

The UST also alleged that Oliver testified under oath at his § 343 examination that he never owned a parcel of rental property in West Palm Beach, Florida formerly owned by his father. According to the complaint, Oliver's examination testimony was knowingly and fraudulently false. The complaint referenced an alleged 2017 Warranty Deed executed by Oliver's father that granted Oliver the residual interest in the Florida property upon his father's death. The UST alleged that Oliver's father passed away shortly after the alleged deed was executed. The complaint further referenced a second Warranty Deed executed in January 2018 conveying title to the Florida property from Oliver to his mother.

Oliver filed an answer to the complaint. It did not admit or deny the UST's allegations but opined that the UST's objection to his discharge was "frivolous."

4

## B.    The discovery disputes.

During the course of the litigation, the UST twice moved to compel Oliver to comply with discovery requirements. These motions led to three orders, two awards of monetary sanctions against him, and ultimately to the order striking his answer and entering his default.

The bankruptcy court's order granting the first motion to compel directed Oliver to provide the UST with contact information for four witnesses he identified in his initial disclosures. Because Oliver had stated that he was not in contact with his witnesses, the court alternately allowed him to provide similar information for the third-party intermediary Oliver said had provided him with affidavits executed by those witnesses. The order also required Oliver to deliver to the UST complete versions of several documents he had turned over as part of the disclosure that were missing pages. As with the witnesses, the court provided Oliver with an alternative means of compliance if he could not obtain the missing pages: he could provide a declaration attesting to his efforts to obtain them. The court awarded $2,199.00 in monetary sanctions against Oliver to be paid to the UST within 30 days.

The UST filed a second motion to compel Oliver to respond to its written discovery requests. It also contended that Oliver was not cooperating with finding a mutually agreeable time and date for his deposition. Oliver had provided two dates for his deposition but proposed that it occur between "7 pm to 10 pm." Oliver failed to file an opposition to

the second motion to compel. Before the hearing, the UST filed a status report advising the court that it had received responses to its interrogatories and requests for production from Oliver, but they were insufficient. The UST also attached an email from Oliver dated December 18, 2020, to its counsel that stated, "as i said previously, i am available for deposition dec 18 and 19 from 10am to 7 pm." The deposition did not occur. Oliver maintained that he previously emailed the UST agreeing to be deposed at those dates and times. The UST denied that Oliver sent any email agreeing to be deposed during business hours prior to December 18, 2020.[3]

Against this backdrop, the court held a hearing on the UST's second motion to compel on January 14, 2021. Though Oliver had not filed a written opposition, he appeared at the hearing and advised the court that he opposed the motion. The court heard from Oliver but granted the motion as unopposed for lack of a written opposition. The court imposed $3,582.55 in monetary sanctions to be paid within 30 days.[4] In its order granting this motion to compel, the court ruled that Oliver needed to

---

[3] Roughly two months later, in his opposition to one of the UST's motions to extend discovery deadlines, Oliver presented an email dated November 24, 2020, for the first time to the court. At the end of the email, there is the following statement: "and as i said previously, i am available for deposition dec 18 and 19 from 10 am to 7 pm." The bankruptcy court found that Oliver's version of this email was fabricated. Oliver challenges this finding as well.

[4] Oliver later stated in his papers that he had no money to pay any sanctions but would not have paid them even if he did because he viewed both sanctions orders as unjust and fraudulently imposed.

submit full and complete responses to the UST's written discovery. The record does not show that Oliver ever provided the UST with additional, complete responses to its discovery requests. More importantly, the court ordered: "The Defendant shall appear for deposition on February 12, 2021 at 9:00 am at the offices of Esquire Court Reporting, 402 West Broadway, Suite 1550, San Diego, CA 92101." He failed to do so.

On February 9, 2021, shortly before his scheduled deposition, Oliver filed a motion for the bankruptcy judge to recuse herself from the adversary proceeding. The court denied the motion.

After Oliver failed to appear for his deposition, the UST filed an ex parte application for order shortening time for a hearing on a motion to extend the discovery cutoff date. In the application and the extension motion, the UST asserted that Oliver had failed to attend his deposition and still had not provided full and complete responses to the UST's written discovery. The court granted the ex parte application and set the extension motion for hearing on shortened time.

Oliver was served with, and opposed, the extension motion. He stated that he would not attend the deposition without an attorney or witness. He also expressed health concerns associated with the pandemic. He maintained that a Chief Judge Order entered in March 2020 for the U.S. District Court for the Southern District of California ("Chief Judge Order") that "excused" in-person appearances for court proceedings, hearings, and conferences also excused his attendance at the deposition.

7

At the April 1, 2021 hearing on the UST's extension motion, Oliver restated his concern that the deposition should be taken virtually. The UST explained that Oliver's deposition was always intended, and scheduled, to be a virtual deposition but he was required to appear at the court reporter's office where he would be put into a conference room for the deposition. The UST's counsel advised the court and Oliver that no one else would be in that room with him during his deposition. Counsel further explained that she would participate virtually.

The court accepted that Oliver apparently misunderstood what was intended as far as the arrangements for the deposition. It proceeded to "reset" his deposition. The court then told Oliver:

> I will order that the deposition be held virtually and I will order that you have your own personal room at the court reporter's office and that the deposition be held virtually by Ms. Miheilic setting up the appropriate call via Zoom or whatever she's going to use to do it, and the deposition goes forward at that time, at a reasonable hour, preferably 10:00 a.m., but it could be at -- I don't know how long Ms. Mihelic is planning to have for the deposition, but normally we allow a day.

The court asked Oliver if this was acceptable. Oliver then renewed his concern that he needed a witness to attend the deposition with him to prevent the other participants from doctoring the results of the deposition. After explaining the precautions and safeguards designed to ensure the accuracy and reliability of deposition transcripts, the court asked the UST whether it objected to a witness attending the deposition in the room with

Oliver. The UST agreed so long as the witness was merely observing and not participating in the deposition.

The court then discussed the date and time for the deposition and suggested April 19, 2021, at 10:00 a.m. The parties agreed, though Oliver informed the court he needed to find a witness who would be available then. The court asked that Oliver inform the UST by the next day if there was a problem finding someone to witness the deposition as scheduled. The court then told the litigants, "I'm going to make an order today that the deposition is to be held April 19, 2021, at 10:00 a.m., at the office of the court reporter." Again, the court reiterated that the deposition would be "at the court reporter" on April 19, 2021. The court also directed the UST to file a status report no later than April 22, 2021, to let the court know whether the deposition occurred as ordered. Before concluding the matter, the court asked, "Mr. Oliver, we're clear, are we now, what your obligations are versus her [Mihelic's] obligations?" Oliver responded, "I believe so."

Consistent with the court's rulings at the hearing, the court issued a minute order that same day providing:

> Hearing continued to 4/29/21 at 2:00[.] The discovery deadlines for the UST is [sic] extended to 5/1/21 per the tentative ruling. The deposition to be held virtual in the Court Reporter office on 4/19/21 at 10:00 a.m.

> Mr. Oliver has the court's permission to have a witness/friend with him at the deposition.

9

Mr. Oliver to let Ms. Mihelic know by tomorrow if his witness/friend is available for 4/19/21.

The UST to file a status report to be filed by 4/22/21 informing the court if the deposition has been completed. Order to be prepared by Ms. Mihelic.

There is no evidence in the record that Oliver informed the UST by April 2, 2021, that his witness was unavailable for the April 19, 2021 deposition.

The UST filed the required status report and informed the court that Oliver did not appear at the court reporter's office for the deposition as ordered. Oliver responded to the UST's status report. He pointed out that he emailed the UST questioning why he had to appear in person at the court reporter's office but received no response. He further stated that the morning of the scheduled deposition he emailed the UST, "in order to not inconvenience my friend, i'm am [sic] preparing to conduct the deposition remotely where i live." That email also requested video conference instructions so that he could be deposed from home. In his response to the status report, Oliver stated that he informed the UST that he was willing to begin the virtual deposition from his home up until noon that day.

The UST attached the email string referenced above to its motion for terminating sanctions. The email string shows that Oliver sent the emails described above, including an email he sent to the UST roughly 30 minutes before the deposition was scheduled to start informing the UST that he

wanted to be deposed from his house. The string also includes the UST's email response telling him that he needed to appear at the court reporter's office as ordered by the court. The UST also informed Oliver: "If you do not appear at the court reporter's office at 10 am today for your deposition, you will be in violation of at least two court orders, and I will seek additional sanctions against you." Oliver responded two minutes later: "i just don't trust you criminals."

The UST's motion for terminating sanctions pointed out that Oliver twice failed to appear for his deposition as ordered by the court. It also informed the court that he never complied with the order on the second motion to compel to provide full and complete responses to the UST's written discovery. Nor did he comply with the order requiring him to supplement his initial disclosures. The UST also noted that Oliver had never paid any of the monetary sanctions awarded against him. The motion was supported by the declaration of the UST's counsel setting out the factual basis of the motion.

Oliver timely opposed the terminating sanctions motion. He argued that the court never required his personal attendance at the court reporter's office because it used the word "virtual" in its April 1, 2021 minute order. He also maintained that the court authorized him to renegotiate the deposition location based upon the court's ruling on a separate motion heard that same day. He again argued that the Chief Judge Order excused his personal attendance at the deposition. In the rest of his response, he

11

largely reiterated points previously made in opposition to the UST's prior motions to compel. According to Oliver, he had always complied with the court's orders and any failure to complete discovery was the UST's fault.

Both Oliver and the UST appeared and argued at the hearing on the terminating sanctions motion. At the conclusion of the hearing the court granted the motion. It subsequently entered an order striking Oliver's answer and entered default against him. Ultimately, the UST applied for entry of a default judgment. The application was supported by the allegations set forth in the UST's complaint, as well as Oliver's § 343 examination testimony, and copies of documents recorded in Rhode Island. The court granted the UST's application and entered a default judgment denying Oliver his discharge on August 4, 2021.

## C.    The appeals.

Oliver timely appealed both the terminating sanctions order and the default judgment.

Prior to filing his notice of appeal of the default judgment, Oliver filed a document entitled "Objection to 'application for default judgment' and the world's largest crime syndicate's entry of judgment by default." If this filing sought to alter or amend the default judgment under Rule 9023, it would have rendered any appeal premature pending a ruling. Rule 8002(b). Because Oliver never requested any specific relief in this objection, the bankruptcy court treated it as a mere statement of displeasure rather than a formal request for relief. Oliver did not respond to this panel when

12

it inquired regarding the nature of his objection. We, therefore, treat it in the same manner as the bankruptcy court. Accordingly, Rule 8002(b) does not apply to Oliver's August 6, 2021 objection, and the objection did not prevent the default judgment from becoming final for purposes of his appeals.

On December 30, 2021, Brian Vukadinovich filed a fifteen-page document in this appeal. He identifies this document as an Amicus Curiae brief in support of Oliver's position on appeal. The filing largely complies with Rule 8017, and it states that the UST consented to its filing. Though we have reviewed and considered the filing, it does not specifically address any of the controlling issues raised in this appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in denying Oliver's recusal motion?

Did the bankruptcy court abuse its discretion when it granted the UST relief under Civil Rule 37(b)(2)(A), struck Oliver's answer, and entered a default judgment against him?

## STANDARD OF REVIEW

We review the denial of a recusal motion for an abuse of discretion. *Hale v. U.S. Tr. (In re Basham)*, 208 B.R. 926, 930 (9th Cir. BAP 1997). We also

13

review for an abuse of discretion the granting of terminating sanctions. *Seiko Epson Corp. v. Koshkalda*, 799 F. App'x 463, 465 (9th Cir. 2019) (citing *Conn. Gen. Life Ins. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007)).

A bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver, Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

In his opening brief, Oliver addresses two main points: (1) the bankruptcy court should have recused itself based on its purported bias; and (2) it should not have imposed terminating sanctions because he complied with the court's discovery orders. We examine each of these points in turn.

## A. The bankruptcy court did not abuse its discretion when it denied Oliver's recusal motion.

Pursuant to 28 U.S.C. § 455 and to Rule 5004(a), Oliver sought to recuse the presiding bankruptcy judge. The court denied the motion finding that he failed to demonstrate sufficient cause for recusal. Oliver challenges that finding.

Rule 5004(a) specifies that 28 U.S.C. § 455(a) governs when a bankruptcy judge should disqualify himself or herself from an adversary proceeding or contested matter. In turn, 28 U.S.C. § 455(a) requires a judge

14

to "disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." The judge also must recuse herself when she has a personal bias or prejudice concerning a party. 28 U.S.C. § 455(b)(1).

On the other hand, when a judge's impression of the party is formed exclusively from events that transpired in the judicial proceedings in question, those impressions "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Similarly, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* Moreover, "a judge has [a] strong…duty to sit when there is no legitimate reason to recuse…." *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (cleaned up). Thus, only in the rarest of circumstances can the court's "rulings, opinions formed or statements made" in the course of proceedings serve as the basis for disqualification. *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008).[5]

---

[5] As *Holland* elaborated:

> We, along with our sister circuits, have identified various matters which will not ordinarily require recusal under 28 U.S.C. § 455:(1) rumor, speculation, beliefs and similar non-factual matters; (2) the mere fact that a judge has previously expressed an opinion on a point of law; (3) prior rulings in the proceeding; (4) mere familiarity with the defendant(s) or the type of charge; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations; and (7) threats or other attempts to intimidate the judge.

Oliver offers a host of reasons why he believes the presiding judge should have recused herself. None required recusal. Oliver initially claims that the UST and the court engaged in impermissible ex parte contacts prohibited by Rule 9003. He cites two "ex parte motions" involving requests to extend time to file and serve other court papers.[6] Ex parte motions filed on the docket are not the sort of communications Rule 9003 was meant to guard against. *See generally In re Vascular Access Ctrs., L.P.*, 630 B.R. 137, 158 (Bankr. E.D. Pa. 2021) (explaining that not all ex parte contacts are forbidden).

Oliver also contends that the court ignored the UST's purported fraud and lies and permitted them to go unpunished while criticizing his litigation conduct. The record does not support the conclusions he attempts to draw. Improper inferences, unwarranted speculation, inuendo, and hyperbole are not sufficient to justify recusal. *See Holland*, 519 F.3d at 914 n.5. Moreover, to the extent the court's remarks were critical of or favorable to one side or the other, they were made in the course of the litigation and are not a proper ground for recusal. *Liteky*, 510 U.S. at 555.

Oliver points to certain professional organizations to which he believes the presiding judge and the UST's staff belonged. More generally, he claims that the court and the UST "manipulated the record." There is no

---

519 F.3d at 914 n.5 (cleaned up).

[6] *See* S.D. Cal Local Rule ("LBR") 9006-1(d); LBR 9013-3 (authorizing certain ex parte motions).

evidence that the available transcripts and dockets are incomplete or inaccurate in any material way. Oliver again relies on improper inferences, unwarranted speculation, inuendo, and hyperbole, which are insufficient to justify recusal. *See Holland*, 519 F.3d at 914 n.5.

Most of Oliver's remaining points are variations of his complaint that the court always ruled against him. Oliver lists specific rulings rejecting his attempts to compel discovery from the UST, and the court's denial of oral motions. As we already have noted, only in the rarest of circumstances can the court's rulings form a proper basis for recusal. *Id.* at 914. No extraordinary circumstances are evident here. Oliver attempts to show bias by pointing out that the court granted at least two oral motions made by the UST while denying his. But the UST's oral motions merely sought extensions of time whereas Oliver made oral motions seeking substantive rulings on significant factual and legal issues, including his claimed rights to trial by jury and appointment of counsel.[7] There is no valid comparison between the two.

---

[7] Oliver makes much of his jury trial demand, but the adversary proceeding never reached trial so the issue is moot. Even if we were to reach it, there is no right to a jury in a challenge to a debtor's discharge under § 727. This is because there is no right to jury for matters based in equity. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55-58 (1989). And "a bankruptcy discharge and questions concerning the dischargeability of certain debts, involve issues with an equitable history and for which there was no entitlement to a jury trial in the courts of England prior to the merger of law and equity." *Schieber v. Hooper (In re Hooper)*, 112 B.R. 1009, 1012 (9th Cir. BAP 1990). Similarly, Oliver insists that he had an absolute constitutional right to the appointment of counsel. There generally is no right to counsel in civil litigation. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). The cases Oliver cites are not to the contrary. *Maness v.*

Finally, Oliver next contends that the court wrongly permitted the UST to draft many of the orders it entered in the adversary proceeding. It is standard practice in many districts for the court to direct the prevailing party to prepare drafts of proposed orders. This practice is adopted by local rule in the Southern District of California Bankruptcy Court. *See* Bankr. S.D. Cal. R. 7054-2, 9013-10; *see also* Bankr. C.D. Cal. R. 9021-1(b)(1)(A) ("Unless the court otherwise directs, a proposed order must be prepared by the attorney for the prevailing party."). In short, the fact that the UST drafted proposed orders and lodged them with the court is not evidence of either wrongdoing or court bias.

In sum, nothing in Oliver's appeal briefs persuades us that the bankruptcy judge was obliged to recuse herself. To the contrary, on this record, she had a continuing duty to consider and resolve the objection to discharge action.

## B. The bankruptcy court did not abuse its discretion when it entered terminating sanctions against Oliver.

Citing Civil Rule 37(b)(2)(A) and (d), the court struck Oliver's answer, entered his default, and ultimately entered a default judgment denying his discharge. The court found that Oliver had refused to

---

*Meyers*, 419 U.S. 449, 455 & n.5 (1975) (state court's imposition of criminal contempt sanctions against defense counsel in a civil injunction proceeding required counsel); *In re G & H Steel Serv.*, 76 B.R. 508, 509-10 (Bankr. E.D. Pa. 1987) (employment of counsel under § 327(a) and (e)). More importantly, even if the court had erred on these issues, or any other matter raised in the adversary, the remedy is appeal, not recusal.

meaningfully participate in discovery and had willfully and repeatedly violated the court's discovery orders for the specific purpose of frustrating the UST's legitimate discovery efforts. Citing *R&R Sails, Inc. v. Insurance Co. of Pennsylvania*, 673F.3d 1240, 1246 (9th Cir. 2012), the court further noted that Oliver bore the burden to establish that his non-compliance with his discovery obligations was either substantially justified or harmless. According to the court, Oliver failed to meet this burden.

In deciding whether to impose terminating sanctions, the court considered each of the factors set forth in *Fatima v. Stern (In re Fatima)*, BAP No. CC–17–1235–LSKu, 2018 WL 2423682, at *4 (9th Cir. BAP May 29, 2018): "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* (citing *Conn. Gen. Life Ins.*, 482 F.3d at 1096). After weighing these factors, the court concluded that it should impose terminating sanctions against Oliver.

Oliver has not pointed to any error in the legal rules the court applied or the factors it considered. Oliver's only pertinent arguments concern the court's findings. He asserts that the court erred when it found that he failed to comply with the court's discovery orders. He alternately argues that his noncompliance was substantially justified. He contends that to the extent discovery was not completed, it was the consequence of the court's and the UST's errors, omissions, and malfeasance.

The record supports the bankruptcy court's findings that he failed to comply with its discovery orders and that his failure was both willful and in bad faith. He ignored the court's orders compelling discovery. The court's first order required Oliver to provide disclosures of his witnesses and production of certain incomplete documents. The second order overruled his objection to the UST's interrogatories and requests for production, required full and complete responses, and set his deposition for a date certain at a specified location. The record does not show that he complied with either order.

Both the first and second order also imposed monetary sanctions. Oliver stated that he was not able pay the sanctions, but he also advised the court that even if he could, he would not pay them.

The court's April 1, 2021 discovery order was the product of considered attempts to address Oliver's stated reasons for not complying with the prior order specifically requiring his attendance at the previously scheduled deposition. The court addressed his concerns at length in an attempt to provide Oliver the opportunity to proceed to trial. He failed to comply with that order as well. Rather, he unilaterally attempted to change the requirements the court imposed for his deposition. He did not seek relief from or clarification of the April 1, 2021 order before doing so. Rather, he substituted his own judgment and reasoning in place of the court's order and has offered excuses after the fact for his noncompliance.

In short, he chose not to comply with a specific order compelling his attendance for deposition for the second time.

The record supports the bankruptcy court's findings that he willfully and in bad faith failed to comply with the court's discovery orders. It does not support Oliver's alternate claim that his noncompliance was substantially justified. When as here a pro se litigant's conduct demonstrates a continuing unwillingness to cooperate with legitimate discovery requests and comply with orders compelling discovery, even after the court has given the litigant leeway, additional time to comply, and has utilized lesser alternative sanctions to no effect, the court has discretion to consider and enter terminating sanctions. *See, e.g.*, *Meeks v. Nunez*, Case No. 13CV973-GPC (BGS), 2017 WL 908733, at *6-8 (S.D. Cal. Mar. 8, 2017), *aff'd,* 857 F. App'x 949 (9th Cir. 2021); *In re Fatima*, 2018 WL 2423682, at *5.[8]

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's orders striking Oliver's answer, entering his default, and granting a default judgment denying his discharge.

---

[8] On February 11, 2022, Oliver filed a motion to strike the UST's appeal brief. The motion to strike is factually and legally meritless. Accordingly, that motion is hereby ORDERED DENIED.

21