**Kristin M. PERRY, et al., Plaintiffs,**

v.

**Arnold SCHWARZENEGGER,**
**et al., Defendants.**

**NO. C 09–02292 JW.**

United States District Court,
N.D. California,
San Francisco Division.

June 14, 2011.

David Boies, Rosanne C. Baxter, Boies Schiller and Flexner, Armonk, NY, Theodore B. Olson, Amir Cameron Tayrani,

Matthew Dempsey McGill, Gibson Dunn & Crutcher LLP, Washington, DC, Christopher Dean Dusseault, Enrique Antonio Monagas, Ethan D. Dettmer, Theane Evangelis Kapur, Theodore J. Boutrous, Jr., Gibson Dunn & Crutcher LLP, Los Angeles, CA, Jeremy Michael Goldman, Theodore Hideyuki Uno, Boies, Schiller & Flexner LLP, Oakland, CA, Sarah Elizabeth Piepmeier, Gibson, Dunn & Crutcher LLP, San Francisco, CA, Josh Schiller, Richard J. Bettan, Boies Schiller & Flexner LLP, New York, NY, Charles Salvatore Limandri, Law Offices of Charles S. Limandri, Rancho Santa Fe, CA, for Plaintiffs.

Andrew Walter Stroud, Mennemeie Glassman & Stroud, Gordon Bruce Burns, Attorney Generals Office, Dept. of Justice, Sacramento, CA, Daniel J. Powell, Tamar Pachter, Office of the California Attorney General, David E. Bunim, Haas & Najarian, San Francisco, CA, Claude Franklin Kolm, Manuel Francisco Martinez, Oakland, CA, Judy Whitehurst, Los Angeles, CA, Charles J. Cooper, David H. Thompson, Howard C. Nielson, Jr., Jesse Michael Panuccio, Peter A. Patterson, Cooper & Kirk PLLC, Austin R. Nimocks, Jordan W. Lorence, Michael W. Kirk, Alliance Defense Fund, Washington, DC, Brian W. Raum, Alliance Defense Fund, James A. Campbell, Scottsdale, AZ, for Defendants.

## ORDER DENYING DEFENDANT– INTERVENORS' MOTION TO VACATE JUDGMENT

JAMES WARE, Chief Judge.

### I. INTRODUCTION

Presently before the Court is Defendant–Intervenors' Motion to Vacate.[1] The Motion is made on the ground that the presiding judge, Chief District Judge Vaughn R. Walker (retired), was disqualified from presiding over this case. The grounds and procedures for recusal or disqualification of a federal judge are codified in Title 28 U.S.C. §§ 455, *et seq.* Those statutes require a federal judge to recuse if, *inter alia,* the judge has a substantial non-pecuniary interest in the case, or if there is some fact that brings the impartiality of the judge reasonably into question. If the judge does not recuse, a motion for disqualification may be made by a party.

Plaintiffs in this case are same-sex couples who claim that a California constitutional provision that redefined marriage in California solely to encompass a union between one man and one woman violated their rights under the federal Constitution. Defendant–Intervenors were allowed to intervene to advance an argument that the California constitutional provision did not violate the federal Constitution. After a court trial, Judge Walker entered judgment for Plaintiffs and enjoined enforcement of the state constitution against them. Defendant–Intervenors appealed that Judgment to the Ninth Circuit. After he had retired, and while the appeal was pending, a newspaper article reported that Judge Walker shared that he is gay and that he was in a same-sex relationship at the time when he was presiding over this case. Defendant–Intervenors brought this Motion before the District Court to vacate the Judgment on the ground that Judge Walker was disqualified from presiding over the case because his same-sex relationship was, or reasonably appeared to be, a non-pecuniary interest that could be substantially affected by the outcome of the case.

After considering the Oppositions to the Motion and the governing law, as dis-

---

1. (Defendant–Intervenors Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Mark A. Jansson, and Protectmarriage.com's Motion to Vacate Judgment, hereafter, "Motion," Docket Item No. 768.)

cussed below, the Court finds that neither recusal nor disqualification was required based on the asserted grounds. The sole fact that a federal judge shares the same circumstances or personal characteristics with other members of the general public, and that the judge could be affected by the outcome of a proceeding in the same way that other members of the general public would be affected, is not a basis for either recusal or disqualification under Section 455(b)(4). Further, under Section 455(a), it is not reasonable to presume that a judge is incapable of making an impartial decision about the constitutionality of a law, solely because, as a citizen, the judge could be affected by the proceedings. Accordingly, the Motion to Vacate Judgment on the sole ground of Judge Walker's same-sex relationship is DENIED.

## II.  BACKGROUND

A detailed procedural history of this case can be found in the Court's August 4, 2010 Findings of Fact and Conclusions of Law. (hereafter, "Aug. 4 Order," 704 F.Supp.2d 921, 928–29 (N.D.Cal.2010).) In addition, a videotape and court reporter's transcript recorded the trial proceedings. The Court summarizes the history of the case as relevant to the present Motion.

From January 11–17, 2010, a bench trial was held by the Court with Judge Walker presiding. (Aug. 4 Order, 704 F.Supp.2d at 928–29.) On August 4, 2010, Judge Walker entered Findings of Fact and Conclusions of Law, and entered Judgment against the government Defendants, permanently enjoining them from the enforcement of Proposition 8 and Article I, § 7.5 of the California constitution. (*Id.* at 1003–04.) On August 4, 2010, Defendant–

Intervenors filed an appeal of the Court's final Judgment with the Ninth Circuit. (*See* Docket Item No. 713.)

On March 2, 2011, following the retirement of Judge Walker, the District Court case was reassigned to Chief Judge James Ware. (*See* Docket Item No. 765.) On April 25, 2011, while the appeal was pending, Defendant–Intervenors moved the District Court to vacate the Judgment. (*See* Docket Item No. 768.) On April 27, 2011, the District Court issued an Order setting the Motion for an expedited hearing and setting a briefing schedule. (*See* Docket Item No. 769.)

On May 10, 2011, Defendant Los Angeles County Clerk–Recorder filed a Statement of No Position on Defendant–Intervenors' Motion.[2] On May 12, 2011, Plaintiff–Intervenor City and County of San Francisco filed an Opposition to Defendant–Intervenors' Motion. (*See* Docket Item No. 775.) Also on May 12, 2011, State Defendants filed an Opposition to Defendant–Intervenors' Motion. (*See* Docket Item No. 778.) On May 13, 2011, Plaintiffs filed an Opposition to Defendant–Intervenors' Motion.[3] Various legal organizations and a broad swath of local and minority bar associations have filed *amicus curiae* briefs in opposition to the Motion. (*See* Docket Item Nos. 783, 788, 793.) On June 13, 2011, the Motion was heard and submitted for decision.

## III.  DISCUSSION

### A.  Jurisdiction

Fed.R.Civ.P. 60(b) prescribes the grounds for moving to vacate a district court judgment. A permissible ground for moving to vacate a judgment is that the district court judge who presided over the

---

2. (*See* Defendant Dean C. Logan Los Angeles County/Registrar–Recorder County Clerk's Statement of No Position to Motion to Vacate Judgment, Docket Item No. 774.)

3. (Plaintiffs' Opposition to Proponents' Motion to Vacate Judgment, hereafter, "Plaintiffs' Opp'n," Docket Item No. 779.)

case was disqualified. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862–63, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Once an appeal from a judgment is filed, the district court is ousted of jurisdiction to take certain actions. *See Davis v. Yageo Corp.*, 481 F.3d 661, 685 (9th Cir.2007). However, Fed. R.Civ.P. 62.1(a) provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because an appeal that has been docketed and is pending, the [district] court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Therefore, notwithstanding the pending appeal of the Judgment, the Court has jurisdiction to hear this Motion and, in so doing, to take one of the actions specified by Rule 62.1.

**B. *Timeliness***

Fed.R.Civ.P. 62.1 provides that a motion seeking relief from a district court while an appeal is pending must be "timely." Plaintiffs challenge the timeliness of the Motion. (Plaintiffs' Opp'n at 17–19.) The timeliness of a motion to vacate a judgment is governed by Fed.R.Civ.P. 60(b), which permits a court to entertain a motion to relieve a party from a final judgment if the motion is made "at the earliest possible time after the facts are discovered." *See First Interstate Bank of Az., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988 n. 8 (9th Cir.2000).

On April 6, 2011, a published interview with Judge Walker reported that he is gay and in a "10–year relationship with a physician."[4] Apparently concluding that such a relationship constituted a ground for disqualification from presiding over this case, Defendant–Intervenors filed the present Motion on April 25, 2011. Defendant–Intervenors contend that their Motion is timely because they filed it "promptly" after they learned of Judge Walker's relationship. (Motion at 12–13 n. 3.) Plaintiffs respond that the Motion is untimely, because Defendant–Intervenors "knew well before" April 2011, and at least two months before the Court announced its decision, that Judge Walker "is gay and in a relationship." (Plaintiffs' Opp'n at 17–19.) Plaintiffs support this contention by pointing to newspaper articles from 2010 that suggested that Judge Walker is gay.[5]

Because the ground for Defendant–Intervenors' Motion is Judge Walker's same-sex relationship, and not his sexual orientation, the Court does not find that the articles from 2010 provide a basis for imputing to Defendant–Intervenors knowledge of Judge Walker's same-sex relationship that would be sufficient to render the Motion untimely. Therefore, the Court finds that the Motion is timely within the meaning of Rules 60(b) and 62.1.

The Court observes that this Motion presents a unique procedural posture, insofar as Defendant–Intervenors first raised the Motion following entry of a Judgment that is under appeal, and before a different district court judge, in light of the retirement of the presiding judge. While such a Motion would be reviewed for clear error if raised for the first time before the circuit court,[6] the Ninth Circuit

---

**4.** (Motion at 7 (citing Dan Levine, *Gay Judge Never Thought to Drop Marriage Case*, Reuters, Apr. 6, 2011, *available at* http://www.reuters.com/article/2011/04/06/us-gaymarriage-judge-idUSTRE735 6TA20110406).)

**5.** (*See, e.g.*, Declaration of Enrique A. Monagas in Support of Plaintiffs' Opposition to Proponents' Motion to Vacate Judgment, Ex. B, Judge Being Gay a Non–Issue During Prop 8 Trial, Docket Item No. 780–2.)

**6.** *Weiss v. Sheet Metal Workers Local No. 544 Pension Trust*, 719 F.2d 302, 304 (9th Cir.

has not definitively held that such a standard would apply in a case where the Motion is brought before the district court, but subsequent to the retirement of the presiding judge. However, because this Motion would not survive the lower *de novo* standard of review, the Court need not reach whether a clear error standard would be more appropriate.

### C. Recusal Pursuant to 28 U.S.C. § 455(b)(4)

At issue is whether Judge Walker was required to recuse himself under Section 455(b)(4).[7]

The fact that a federal judge shares a fundamental characteristic with a litigant, or shares membership in a large association such as a religion, has been categorically rejected by federal courts as a sole basis for requiring a judge to recuse her or himself.[8] Defendant–Intervenors deny that the Motion is based on bias against gay or lesbian judges or based on the broad proposition that a gay or lesbian judge is incapable of being fair if sexual orientation is an issue in a case.[9] Rather, Defendant–Intervenors narrow their Motion to the contention that Judge Walker had an actual interest in the case. Plaintiffs in the underlying case were same-sex couples who were challenging the constitutionality of a California Proposition that, Plaintiffs contend, stripped them of the right, as same-sex couples, to marry. At the time the case was assigned to him, Judge Walker was in a same-sex relationship. Defendant–Intervenors contend that Judge Walker had an interest in the case because if he were to decide that Plaintiffs were entitled to have their right to marry restored, even though there was no evidence that Judge Walker intended to marry, the sole fact that he was in a same-sex relationship placed Judge Walker in the position of deciding a case that could affect him if he were to desire to marry. (Motion at 5–7.)

Section 455(b)(4) provides that a judge shall disqualify himself where "[h]e knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding. . . ." Unlike Section 455(a), Section 455(b) provides for mandatory recusal in cases of "actual bias" and, thus, the test is a subjective one. *United States v. Spangle*, 626 F.3d 488, 496 (9th Cir.2010). Section 455(b)(4) contains two distinct bases for recusal: (1) when a judge has a financial interest in the subject matter in controversy or in a party to the proceeding; or (2) when a judge has any other interest that could be substantially affected by the outcome of the proceeding. The latter basis of "any other interest," unlike the former basis which is

1983).

**7.** The Court examines this ground for the Motion first, while recognizing that even if the Court finds that Judge Walker has no actual interest, a finding or reasonable appearance of partiality under Section 455(a) is an independent ground for disqualification. *See, e.g., First Interstate Bank of Az.*, 210 F.3d at 985 n. 1.

**8.** *See, e.g., Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 660 (10th Cir.2002); *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 138 F.3d 33, 37 (2d Cir.1998); *Blank v. Sullivan & Cromwell*, 418 F.Supp. 1, 4 (S.D.N.Y.1975); *Feminist Women's Health Center v. Codispoti*, 69 F.3d 399, 400 (9th Cir.1995); *United States v. Alabama*, 828 F.2d 1532, 1541–42 (11th Cir.1987); *In re City of Houston*, 745 F.2d 925, 931 (5th Cir.1984).

**9.** (*See* Motion at 5 ("It is important to emphasize at the outset that we are *not* suggesting that a gay or lesbian judge could not sit in on this case.") (emphasis in original).)

not so modified, requires recusal only if these non-pecuniary interests "could be substantially affected by the outcome in the proceeding." *In re Cement Antitrust Litigation,* 688 F.2d 1297, 1308 (9th Cir. 1982).

Neither the Ninth Circuit nor any other circuit has considered whether a judge presiding over a same-sex marriage case who is also in a same-sex relationship has a disqualifying non-pecuniary interest. However, other circuits have held that "where federal judges have possessed speculative [non-pecuniary] interests as members of large groups, [ ] these interests [are] too attenuated to warrant disqualification [under Section 455(b)(4) ]." *Alabama,* 828 F.2d at 1541–42. In light of the attenuated nature of non-pecuniary interests held by a judge as a general member of the public or a large community, "courts also have concluded that no personal bias or reasonable doubt about the judge's impartiality exists in these circumstances." *Id.* In regards to non-pecuniary benefits reaped by judges solely by nature of their membership in a minority group, courts have cautioned against mandating recusal "merely because of the way in which the attorneys in the case decided to frame the class," noting ripe grounds for manipulation. *In re City of Houston,* 745 F.2d at 931 (citing *Ely Valley Mines, Inc. v. Lee,* 385 F.2d 188, 191 (9th Cir.1967) (finding recusal not warranted when parties intentionally framed the litigation to involve the presiding judge's personal interests in order to move for recusal)). Further, such a standard "would come dangerously close to holding that minority judges must disqualify themselves from all major civil rights actions." *Alabama,* 828 F.2d at 1542.

■ These cases lead the Court to adopt the following legal conclusion: In a case that could affect the general public based on the circumstances or characteristics of various members of that public, the fact that a federal judge happens to share the same circumstances or characteristic and will only be affected in a similar manner because the judge is a member of the public, is not a basis for disqualifying the judge under Section 455(b)(4).

■ In applying this conclusion to the present case, the Court finds that Judge Walker was not required to recuse himself under Section 455(b)(4) on the ground that he was engaged in a long-term same-sex relationship and, thus, could reap speculative benefit from an injunction halting enforcement of Proposition 8 in California. In particular, in a case involving laws restricting the right of various members of the public to marry, any personal interest that a judge gleans as a member of the public who might marry is too attenuated to warrant recusal. Requiring recusal because a court issued an injunction that could provide some speculative future benefit to the presiding judge solely on the basis of the fact that the judge belongs to the class against whom the unconstitutional law was directed would lead to a Section 455(b)(4) standard that required recusal of minority judges in most, if not all, civil rights cases. Congress could not have intended such an unworkable recusal statute.

■ Alternatively, Defendant–Intervenors contend that Judge Walker should be disqualified because his same-sex relationship gave him a markedly greater interest in a case challenging restrictions on same-sex marriage than the interest held by the general public. The Court rejects this argument on two readily apparent grounds. First, it is inconsistent with the general principles of constitutional adjudication to presume that a member of a minority group reaps a greater benefit from application of the substantive protections of our Constitution than would a member of the majority. The fact that this is a case

challenging a law on equal protection and due process grounds being prosecuted by members of a minority group does not mean that members of the minority group have a greater interest in equal protection and due process than the rest of society. In our society, a variety of citizens of different backgrounds coexist because we have constitutionally bound ourselves to protect the fundamental rights of one another from being violated by unlawful treatment. Thus, we all have an equal stake in a case that challenges the constitutionality of a restriction on a fundamental right. One of the duties placed on the shoulders of federal judges is the obligation to review the law to determine when unequal treatment violates our Constitution and when it does not. To the extent that a law is adjudged violative, enjoining enforcement of that law is a public good that benefits all in our society equally. Although this case was filed by same-sex couples seeking to end a California constitutional restriction on their right to marry, all Californians have an equal interest in the outcome of the case. The single characteristic that Judge Walker shares with the Plaintiffs, albeit one that might not have been shared with the majority of Californians, gave him no greater interest in a proper decision on the merits than would exist for any other judge or citizen.

Second, disqualifying Judge Walker based on an inference that he intended to take advantage of a future legal benefit made available by constitutional protections would result in an unworkable standard for disqualification. Under such a standard, disqualification would be based on assumptions about the amorphous personal feelings of judges in regards to such intimate and shifting matters as future desire to undergo an abortion, to send a child to a particular university or to engage in family planning. So too here, a test inquiring into the presiding judge's desire to enter into the institution of marriage with a member of the same sex, now or in the future, would require reliance upon similarly elusive factors. Given Section 455(b)(4)'s requirement that non-pecuniary interests must be "substantially affected" to require recusal, recusal could turn on whether a judge "fervently" intended to marry a same-sex partner versus merely "lukewarmly" intended to marry, determination that could only be reached through undependable and invasive self-reports. The Ninth Circuit has recognized the inherent unworkability of such a subjective recusal standard. *Feminist Women's Health Center*, 69 F.3d 399 at 400. In holding that recusal was not warranted on Article VI grounds in an action brought by an abortion clinic against protestors of the clinic where one of the presiding panel judges belonged to the Catholic faith, the court acknowledged that any test where recusal would turn on whether the judge's religious beliefs were "fervently-held" or "lukewarmly maintained" would collapse under such amorphous, unworkable distinctions. *Id.* ("No thermometer exits for measuring the heatedness of a religious belief objectively.").

To hold otherwise, and require recusal merely based on the fact that the presiding judge is engaged in a long-term same-sex relationship, is to place an inordinate burden on minority judges. Such a standard would, in essence, infer subjective future intent on the basis of a judge's membership in a particular class. In this case, it is notable that the presiding judge has publicly disclosed that he is in a "10–year relationship with a physician." [10] However-

---

**10.** (Motion at 7 (citing Dan Levine, *Gay Judge Never Thought to Drop Marriage Case*, Reuters, Apr. 6, 2011, *available at* http://www.reuters.com/article/2011/04/06/us-gaymarriage-judge-idUSTRE735 6TA20110406).)

er, there has been no similar disclosure as to the judge's intent to marry, whether now or in the future. The Court declines to adopt the principle that absence of disclosure should warrant the mandatory inference that the presiding judge "fervently" intends to marry and, thus, holds an interest in this case that is substantially affected by the outcome.[11] Absence of disclosure could equally connote ambivalence or uncertainty in the face of such a weighty question as whether one intends to marry now or in the future, especially when such an intent involves the willingness and participation of a partner for whom the judge cannot answer. Inferring otherwise would transmute the subjective standard of Section 455(b)(4) requiring "actual bias" into an objective standard, in contravention of clear Ninth Circuit precedent.[12] *Spangle,* 626 F.3d at 496. Further, assuming *arguendo* such a disclosure had occurred, it is beyond the institutional capacity of a court to interpret the subtleties of a judge's personal, and likely ever-changing, subjective states on such intimate matters. Even a full renunciation on the record of any intent to ever marry a

person of the same sex would be ripe for challenge, should the judge's disclaimer not ring true enough or should indications arise that the judge's intent had shifted since the renunciation. Thus, to base a recusal standard on future subjective intent to take advantage of constitutional rights is to create an inadministrable test, frustrating congressional efforts to protect judicial integrity with a clear, mandatory recusal statute.

Defendant–Intervenors' reliance on *In re City of Houston* and *Alabama* for the principle that Section 455(b)(4) mandated recusal in the present case misinterprets the doctrine.[13] *In re City of Houston* involved an action seeking injunctive relief against the City's at-large election system on the ground that it discriminated against the City's African–American and Hispanic citizens by diluting their votes. 745 F.2d at 926–27. The judge assigned to the case was African–American and a resident of the City. The City moved the judge to recuse herself under Sections 455(a), (b)(4) and (b)(5)(i). The City contended that recusal was warranted because the judge

---

**11.** Contrary to Defendant–Intervenors' efforts to distinguish *In re City of Houston* and *Alabama* on the grounds that the judges in each made disclosures regarding information relevant to their membership in the class, in neither case did the circuit courts hold that Section 455(b)(4) mandated such disclosure. In fact, in holding that recusal was not required, the Eleventh Circuit recognized in *Alabama* that any potential interest, disclosed or not, to attend a public institution of higher learning is "shared by all young black Alabamians." 828 F.2d at 1541. Moreover, while the judge in *In re City of Houston* did disclose on the record certain facts that would be relevant to her status as a class member, including her past and current residential addresses, and the voter registration status of both herself and her husband, the court neither based its holding upon disclosure, nor required the presiding judge to disclose her future intent to move into a predominantly black or Hispanic neighborhood or to register

to vote. *See LeRoy v. City of Houston,* 592 F.Supp. 415, 418 (S.D.Tex.1984). Rather, the court focused its inquiry on the factors that placed the presiding judge within the class, all of which would generally be a matter of public record and did not extend to consideration of future intentions.

**12.** Moreover, such a presumption would similarly contravene Ninth Circuit precedent recognizing the opposite principle: that a presumption of impartiality should guide any interpretation of a judge's decision not to disclose. *See, e.g., First Interstate Bank of Az.,* 210 F.3d at 988; *see also Ortiz v. Stewart,* 149 F.3d 923, 939 (9th Cir.1998).

**13.** (Reply Brief in Support of Motion to Vacate of Defendant–Intervenors Dennis Hollingsworth, Gail J. Knight, Martin F. Gutierrez, Mark A. Jansson, and Protect-marriage.com at 6–9, hereafter, "Reply," Docket Item No. 787.)

herself was a member of the class and, given her ethnicity, it was likely that at least one member of her family was also a member of the class. *Id.* at 930. The Fifth Circuit held that it was not clearly erroneous for the judge to deny the City's motion. *Id.* at 926–27. The court held that the judge's "posture in this case is not what Congress intended to proscribe in the recusal provisions of [Section 455]" because: (1) the judge's "interest in this case is nonpecuniary and is no different from that of the general voting public ...."; (2) there was a "lack of any possible attrition of public confidence in the impartiality of the judicial system if recusal is not ordered"; (3) of "the attenuated nature of any interest that the judge might have in the outcome of this case"; and (4) of "the illusoriness of the class delineation, inasmuch as all members of the voting public in Houston have an equal interest in the suit...." *Id.* at 932. Given the attenuated nature of the judge's interest, the court held that recusal under Section 455(b)(4) was not required. *Id.*

In *Alabama,* the Eleventh Circuit held that it was not clearly erroneous for the African–American trial judge, who had minor children who were members of the class, which included all children "who are eligible to attend or will become eligible to attend the public institutions of higher learning ...," to deny a motion to disqualify in an action seeking solely injunctive relief desegregating Alabama's system of public higher education. 828 F.2d at 1541–42. Relying heavily on the Fifth Circuit's holding in *In re City of Houston,* the court found that "the interests of [the presiding judge's] children are not 'substantial' enough to merit disqualification" and that "[a]ny beneficial effects of this suit upon these children were remote, contingent and speculative." *Id.* at 1541. The court based its holding on the ground that it lacked evidence that the presiding judge's children had any future intent to attend a public institution of higher learning and, further, "[a]ny potential interest ... is shared by all young black Alabamians." *Id.* In addition, the court found that "[t]o disqualify [the presiding judge] on the basis of his children's membership in the plaintiff class also would come dangerously close to holding that minority judges must disqualify themselves from all major civil rights actions," a result that would be "intolerable." *Id.* at 1542.

Moreover, in contrast to the present case, both the Eleventh and Fifth Circuits faced civil rights actions that were brought on behalf of a class, and in each case the presiding judge or that judge's minor children were parties to the action before them. Here, any substantial interest that Defendant–Intervenors contend is affected by the outcome of the present action is even more attenuated given the fact that the benefit is not bestowed upon the presiding judge as a consequence of his membership within a class, but as a possible side-effect of the enjoinment of the enforcement of an unconstitutional proposition. Such an interest is the same as that shared by all citizens of California and, thus, the same reasoning that guided the Fifth and Eleventh Circuits to hold that such an attenuated interest is not sufficiently substantial to require recusal under Section 455(b)(4) also applies in this case.

Accordingly, the Court DENIES Defendant–Intervenors' Motion to Vacate Judgment on the ground that under Section 455(b)(4) the presiding judge failed to recuse himself.

**D. *Recusal Pursuant to 28 U.S.C. § 455(a)***

Alternatively, Defendant–Intervenors contend that even if Judge Walker's same-sex relationship did not constitute a substantial interest under Section 455(b)(4), that relationship brings his impartiality

reasonably into question under Section 455(a). (Motion at 2, 10.) Thus, they contend that Judge Walker should be disqualified to protect the integrity of the judicial system. (*Id.*) Further, they contend that the fact of Judge Walker's nondisclosure of his relationship brings his impartiality into question under Section 455(a). (*Id.* at 12.) The Court considers each contention in turn.

### 1. Whether Judge Walker's Impartiality Could Reasonably Be Questioned

■ Section 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[14] "Since a federal judge is presumed to be impartial, the party seeking disqualification bears a substantial burden to show that the judge is biased." *Torres v. Chrysler Fin. Co.*, No. C 07–00915 JW, 2007 WL 3165665, at *1 (N.D.Cal. Oct. 25, 2007) (citing *Reiffin v. Microsoft Corp.*, 158 F.Supp.2d 1016, 1021–22 (N.D.Cal.2001)). "The test for creation of apparent bias sufficient to require dismissal under [Section 455] is an objective one: 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Herrington v. Sonoma Cnty.*, 834 F.2d 1488,

1502 (9th Cir.1987) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)). In this context, the "reasonable person" is not someone who is "hypersensitive or unduly suspicious," but rather a "well-informed, thoughtful observer" who "understand[s] all the relevant facts" and "has examined the record and law." *United States v. Holland*, 519 F.3d 909, 914 (9th Cir.2008) (citations omitted).[15] This standard does not mandate recusal upon the mere "unsubstantiated suspicion of personal bias or prejudice." *Id.* (citation omitted).

The reasonable observer contemplated by Section 455(a) is, like the "reasonable person" contemplated in other areas of the law, a personification created by the Court to facilitate discussion of the idea of "reasonableness." However, in speaking of reasonableness in terms of the reasonable person, the Court is careful to avoid converting the objective standard of Section 455(a) into a subjective one. That is, there is no actual person whose thoughts or beliefs are used as the yardstick of what is "reasonable." The Court, in creating that personification of reasonableness, is bound to do so within the confines of the Constitution and other law. Thus, it would not be reasonable to regard a fact as bringing a judge's impartiality into question if doing

---

**14.** Even if there is no finding of actual bias or partiality, the mere appearance of partiality may be sufficient under Section 455(a) to require recusal. *See, e.g., First Interstate Bank of Az.*, 210 F.3d at 985 n. 1 (finding that the basis for recusal may be the "appearance of impropriety," even where there was "no suggestion of actual impropriety or lack of impartiality" by a judge).

**15.** In *Holland*, the court explained that the "reasonable" observer under Section 455(a) is "someone who 'understand[s] all the relevant facts' and has examined the record and law." *Holland*, 519 F.3d at 914 (citation omitted). The *Holland* court did not make clear whether the "law" which the reasonable

observer would examine consists of: (1) the substantive law governing the case itself (e.g., contract law in a breach of contract case); (2) the law of recusal governing judicial conduct; or (3) both. However, because the *Holland* court stated that a reasonable observer would examine "the record and law," the Court understands it to have meant that the reasonable observer would examine the record of the case (i.e., the facts of the case) and the law pertinent to those facts. Thus, the Court construes *Holland* to say that the reasonable observer under Section 455(a) is someone who has examined the substantive law governing the case itself, but who is not necessarily familiar with the law of recusal.

so would institute a "double standard for minority judges" whereby the fact that a judge is gay, or black, or female would "raise doubts about [that judge's] impartiality." *See Alabama,* 828 F.2d at 1542. In addition, the Court recognizes that a fact is not necessarily a basis for questioning a judge's impartiality merely because that fact might lead a segment of the public to question the judge's impartiality. Reasonableness is not determined on the basis of what a particular group of individuals may think, nor even on the basis of what a majority of individuals in a group believe to be the case.[16]

In addition, Section 455(a) is "limited by the 'extrajudicial source' factor which generally requires as the basis for recusal something other than rulings, opinions formed or statements made by the judge during the course of trial." *Holland,* 519 F.3d at 913–14. The Ninth Circuit has cautioned that Section 455(a) claims "are fact driven, and as a result, the analysis of a particular [Section 455(a)] claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *Clemens v. United States Dist. Court for Central Dist.*

*of California,* 428 F.3d 1175, 1178 (9th Cir.2005) (citation omitted). Moreover, Section 455(a) "does not require recusal based on speculation." *Id.* at 1180.

■ Here, Defendant–Intervenors contend that consideration of the fact that Judge Walker "has been involved in a 10–year (8–year at the time that Plaintiffs commenced this suit) committed same-sex relationship" would lead a reasonable person to question Judge Walker's impartiality. (Motion at 11–12.) The Court finds that disqualification under Section 455(a) on the basis of this fact fails, because it depends upon the assumption that a judge who is in a relationship has an interest in getting married which is so powerful that it would render that judge incapable of performing his duties.[17] Under Ninth Circuit law, however, this assumption is unreasonable. A well-informed, thoughtful observer would recognize that the mere fact that a judge is in a relationship with another person—whether of the same *or* the opposite sex—does not *ipso facto* imply that the judge must be so interested in marrying that person that he would be unable to exhibit the impartiality which, it is presumed, all federal judges maintain.[18] *Torres,* 2007 WL 3165665, at *1; *see also Holland,* 519 F.3d at 912 (explaining that a

**16.** *See, e.g., Cheney v. U.S. Dist. Court for Dist. of Columbia,* 541 U.S. 913, 923–29, 124 S.Ct. 1391, 158 L.Ed.2d 225 (2004) (Scalia, J.) (explaining, in response to a Section 455(a) recusal motion, that Justice Scalia's impartiality could not "reasonably be questioned," even though many members of the public had concluded that he appeared to be partial in the case, because the recusal question cannot be determined by "uninformed opinion[s]," even if a "significant portion of the press … demands" such recusal); *see also In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988) (explaining that judges determine the "appearance of impropriety" under Section 455(a) as they determine "all legal issues," and "not by considering what a straw poll of the only partly informed man-in-the-street would show").

**17.** (*See, e.g.,* Motion at 5 (stating that it "must be presumed" that Judge Walker, by finding that Proposition 8 was unconstitutional, in effect "issue[d] an injunction directing a state official to issue a marriage license *to him* ") (emphasis in original).)

**18.** Further, the mere fact that an individual is in a relationship with a person does not necessarily imply that that individual is interested in getting married to that person at all. (*See, e.g.,* Reply at 2 (contending that "almost two-thirds of [committed same-sex couples] in California would get married if permitted to do so," which suggests that more than one-third of such couples in California have no interest in being married).)

judge's general obligation to participate in cases assigned to him is reflected in the oath whereby federal judges "obligate[ ] [themselves] to 'faithfully and impartially discharge and perform [their] duties' and to 'administer justice without respect to persons, and do equal right to the poor and to the rich'") (quoting 28 U.S.C. § 453). To assume otherwise is to engage in speculation about a judge's motives and desires on the basis of an unsubstantiated suspicion that the judge is personally biased or prejudiced. Mere speculation of that nature does not trigger the recusal requirements of Section 455(a). *Clemens,* 428 F.3d at 1180; *Holland,* 519 F.3d at 914.

### 2. Whether Judge Walker's Non–Disclosure of His Relationship Would Lead a Reasonable Observer to Question His Impartiality

■ Alternatively, Defendant–Intervenors contend that a reasonable observer would question Judge Walker's impartiality, given the fact that Judge Walker did not disclose his same-sex relationship "until eight months after final judgment was entered, and after he had retired from the bench," and because Judge Walker "has never disclosed whether he and his partner have (or have ever had) any interest in marrying should a right to marry an individual of the same sex be established." (Motion at 11–12.) That is, Defendant–Intervenors posit that Judge Walker's silence about the existence of his relationship, and about whether he and his partner have any interest in marrying, would necessarily give rise, in the mind of a reason-

able observer, to an assumption that Judge Walker's silence indicates that he was not impartial.[19] However, silence is by its very nature ambiguous, and thus is open to multiple interpretations. Another, and equally reasonable, way to interpret that silence is suggested by Ninth Circuit case-law, which holds that it is to be presumed that any judge is impartial. *See, e.g., First Interstate Bank of Az.,* 210 F.3d at 988 (stating that judges "are presumed to be impartial and to discharge their ethical duties faithfully so as to avoid the appearance of impropriety"); *see also Ortiz v. Stewart,* 149 F.3d at 939 ("[W]e abide by the general presumption that judges are unbiased and honest"). Beginning from the presumption that judges are impartial, the Court postulates that a judge who is silent in such a situation has already, *sua sponte,* considered the question of recusal and has determined that he need not disqualify himself, because no reasonable observer would conclude that his impartiality could reasonably be questioned. To adopt Defendant–Intervenors' contrary interpretation would vitiate the presumption of judicial impartiality, as it would lead the reasonable observer to the opposite presumption; namely, that silence is to be taken as conclusive evidence of a judge's partiality.

Defendant–Intervenors' reliance on *In re Kensington International Limited,*[20] *United States v. Murphy*[21] and *Tramonte v. Chrysler Corp.*[22] in support of the proposition that Judge Walker was required to disclose the existence and nature of his relationship is misplaced.[23] (Motion at 8–

---

**19.** As the Court has previously found, Judge Walker was under no duty to disclaim any future subjective interest in entering a same-sex marriage.

**20.** 368 F.3d 289 (3d Cir.2004).

**21.** 768 F.2d 1518 (7th Cir.1985).

**22.** 136 F.3d 1025 (5th Cir.1998).

**23.** In addition, Defendant–Intervenors appear to suggest that Judge Walker had a duty, under Section 455(e), to disclose his same-sex relationship. (*See* Motion at 2 (contending that Judge Walker, because of his same-sex relationship, was "obligated either to recuse himself or to provide 'full disclosure on the record of the basis for disqualification'") (quoting 28 U.S.C. § 455(e)).) However, this

9.)  In *In re Kensington*, the Third Circuit found that a district court judge should have recused himself under Section 455(a), because of his extensive *ex parte* communications with two court-appointed advisors in a complex asbestos-related case, where those advisors were simultaneously representing asbestos claimants in a separate case.  *In re Kensington*, 368 F.3d at 302–04.  The Third Circuit stated that the burden was on the judge to inform the parties that he was being advised *ex parte* by lawyers who, because they were "actively participating as zealous advocates" in the other case, had a conflict of interest.  *Id.* at 313–14.  *Murphy* involved a criminal trial in which the district court judge was "the best of friends" with the government's principal lawyer, and in which the judge and the lawyer went on a vacation together immediately following the trial.  *Murphy*, 768 F.2d at 1536–37.  The Seventh Circuit found that the burden was on the judge to disclose his close friendship and vacation plans with the lawyer.  *Id.* at 1537.  *Tramonte* was a class-action suit in which Chrysler was the defendant, and in which a family member of the district court judge owned a car manufactured by Chrysler, which made that family member a potential member of the class.  *Tramonte*, 136 F.3d at 1027.  The Fifth Circuit found that the burden was on the judge to disclose whether her spouse or children owned a car manufactured by Chrysler, because a judge "has a duty to be watchful of such disqualifying circumstances" and disclose them on the record.  *Id.* at 1030–31.

In each of these instances, the judge was associated with one or more individuals who had a clear, concrete stake in the outcome of the litigation.  And in each instance, the appellate court found that the judge was required to disclose the existence and nature of his association with those individuals.  Here, by contrast, Judge Walker had no such association, and thus had nothing to disclose.  Defendant–Intervenors cite no case suggesting that a judge has a duty to disclose information about his personal life when such information does not pertain to the judge's association with an individual having a clear, concrete stake in the outcome of the litigation, and the Court is not aware of any cases standing for that proposition.[24]

In fact, the Court observes that Judge Walker, like all judges, had a duty to preserve the integrity of the judiciary.  Among other things, this means that if, in an overabundance of caution, he were to have disclosed intimate, but irrelevant, details about his personal life that were not reasonably related to the question of disqualification, he could have set a pernicious precedent.  Such a precedent would be

contention is misguided.  Section 455(e) governs the conditions under which a ground for disqualification may be waived by the parties, and states that if the ground for disqualification arises only under Section 455(a), a judge may accept waiver of that ground from the parties, "provided [that the waiver] is preceded by a full disclosure on the record of the basis for disqualification."  Thus, the requirement of disclosure on the record is conditional on the finding that there was a valid ground for disqualification under Section 455(a).  However, as discussed previously, the Court finds that Judge Walker had no valid ground for disqualifying himself under Section 455(a).  Therefore, the disclosure requirement of Section 455(e) was not triggered, and Judge Walker had no obligation under Section 455(e) to disclose his relationship status on the record.

**24.**  In fact, courts that have considered the question have taken the opposite view.  *See, e.g., In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir.2004) (declining to "craft a procedure that essentially will require district judges to submit to discovery … when a party lacks an adequate factual basis for disqualification on non-financial matters").

detrimental to the integrity of the judiciary, because it would promote, incorrectly, disclosure by judges of highly personal information (e.g., information about a judge's history of being sexually abused as a child), however irrelevant or time-consuming. Contrary to the intent of Section 455, which was designed to preserve judicial integrity through practices of transparency, it is clear that fostering the practice of commencing a judicial proceeding with an extensive exploration into the history and psyche of the presiding judge would produce the spurious appearance that irrelevant personal information could impact the judge's decision-making, which would be harmful to the integrity of the courts.

Finally, the presumption that "all people in same-sex relationships think alike" is an unreasonable presumption, and one which has no place in legal reasoning. The presumption that Judge Walker, by virtue of being in a same-sex relationship, had a desire to be married that rendered him incapable of making an impartial decision, is as warrantless as the presumption that a female judge is incapable of being impartial in a case in which women seek legal relief. On the contrary: it is reasonable to presume that a female judge or a judge in a same-sex relationship is capable of rising

above any personal predisposition and deciding such a case on the merits. The Motion fails to cite any evidence that Judge Walker would be incapable of being impartial, but to presume that Judge Walker was incapable of being impartial, without concrete evidence to support that presumption, is inconsistent with what is required under a reasonableness standard.[25]

Accordingly, the Court DENIES Defendant–Intervenors' Motion to Vacate Judgment on the ground that the presiding judge failed to recuse himself under Section 455(a).

## IV. CONCLUSION

The Court DENIES Defendant–Intervenors' Motion to Vacate Judgment.[26]

**25.** Defendant–Intervenors also point to a number of Judge Walker's rulings in the case, "both procedural and substantive," and contend that the "nature of these rulings" contributes to the "appearance of partiality" under Section 455(a). (Motion at 3–4.) Defendant–Intervenors concede that these rulings of themselves would not constitute a valid basis for a Section 455(a) motion, insofar as judicial rulings "almost never" constitute a basis for such a motion. (*Id.* at 12 (citing *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).) Defendant–Intervenors only contend that such rulings would "deepen the concerns" that a reasonable observer would, they con-

tend, already have about Judge Walker's impartiality "as a result of his long-term same-sex relationship." (*Id.*) However, as discussed previously, the Court finds that a reasonable observer would not question Judge Walker's impartiality on the basis of his same-sex relationship.

**26.** In light of the Court's finding that there was no violation of Section 455, the Court need not reach the issue of whether such a violation would be of such a degree as to warrant the extraordinary remedy of vacating the Judgment under Fed.R.Civ.P. 60(b). *See Liljeberg*, 486 U.S. at 862–63, 108 S.Ct. 2194.