IN RE DISQUALIFICATION OF PARKER.

THE STATE OF OHIO *v.* ZARLE.

[Cite as *In re Disqualification of Parker,* 135 Ohio St.3d 1216, 2012-Ohio-6307.]

*Judges—Affidavit of disqualification—R.C. 2701.03—Request for removal denied—No basis established warranting disqualification.*

(No. 12-AP-103—Decided September 25, 2012.)

ON AFFIDAVIT OF DISQUALIFICATION in Summit County Court of Common Pleas Case No. CR 2012-07-1992.

————————————

**O'CONNOR, C.J.**

**{¶ 1}** Defendant Brian Zarle has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Tom Parker from presiding over any further proceedings in case No. CR 2012-07-1992, now pending for a pretrial conference in the Court of Common Pleas of Summit County.

**{¶ 2}** Zarle has been charged with intimidation of Judge Carol J. Dezso, a judge of the Summit County Domestic Relations Court. Zarle seeks Judge Parker's disqualification "[d]ue to the relationship between the alleged victim and the Judge hearing the case."

**{¶ 3}** Judge Parker has responded in writing to the concerns raised in Zarle's affidavit. Judge Parker describes Judge Dezso as "an acquaintance" with whom he does not interact or socialize, aside from the annual meeting of Summit County Common Pleas Court judges or the occasional meeting on the street. Judge Parker further asserts that he has had no contact with Judge Dezso concerning Zarle's case, and Judge Parker affirms that he has no bias or prejudice against Zarle.

{¶ 4} For the following reasons, no basis has been established for ordering the disqualification of Judge Parker.

{¶ 5} As an initial matter, there is no suggestion in the record that Judge Parker is actually biased or prejudiced against Zarle or that he cannot fairly and impartially hear the underlying case. Instead, Zarle is presumably arguing that Judge Parker should be removed to avoid an appearance of bias or impartiality because Judge Parker and the alleged victim, Judge Dezso, are both judges of the Summit County Court of Common Pleas. That relationship alone, however, does not automatically mandate disqualification of Judge Parker.

{¶ 6} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. To be sure, in previous affidavit-of-disqualification proceedings, the chief justice has disqualified an entire bench of judges where a professional relationship between the judges and the alleged victim could suggest to a reasonable person the existence of prejudice or impropriety. *See, e.g.*, *In re Disqualification of Nadel*, 47 Ohio St.3d 604, 546 N.E.2d 926 (1989) (all judges of common pleas court disqualified from hearing case of defendant charged with assault and kidnapping of the wife and infant daughter of another judge of the court); *In re Disqualification of Nugent*, 47 Ohio St.3d 601, 546 N.E.2d 927 (1987) (all judges of the common pleas court disqualified from hearing case of defendant charged with murder when the victim was a nephew of one of the judges and the victim's parents were also court and county prosecuting attorney employees).

{¶ 7} However, when the professional relationship between the judge and the alleged victim is not particularly close, there is no reason to question the judge's impartiality. Under these circumstances, disqualification requests are

generally denied. For example, in *In re Disqualification of Lucci*, 117 Ohio St.3d 1242, 2006-Ohio-7230, 884 N.E.2d 1093, the affiant, who was the defendant in the underlying action, was charged with several felonies involving an alleged plot to murder a municipal court judge, among other local officials. *Lucci* at ¶ 2. The affiant requested disqualification of the common pleas court judge because the intended victims included a fellow judge, as well as other well-known public figures. *Id.* The chief justice found that the professional relationship between the common pleas court judge and the intended victims was not particularly close and that, unlike in *Nadel* or *Nugent*, the intended victims were evidently not harmed by the defendant's alleged crimes. *Id.* at ¶ 7. Further, it was unclear from the record whether the intended victims would even be called to testify. *Id.* As the former chief justice concluded, " '[j]udges are elected to preside fairly and impartially over a variety of legal disputes, including those involving public officials.' " *Id.*, quoting *In re Disqualification of Villanueva*, 74 Ohio St.3d 1277, 1278, 657 N.E.2d 1372 (1995). *See also In re Disqualification of Mason*, No. 11-AP-090 (Sept. 22, 2011) (denying affidavit in juvenile case where the alleged victim was the son of a bailiff of a judge in a different division of the court); *In re Disqualification of Celebrezze*, 74 Ohio St.3d 1231, 657 N.E.2d 1341 (1991) (denying affidavit where party and potential witness in a domestic-relations case was a sitting judge in a different division of the common pleas court).

{¶ 8} The facts here more closely resemble *Lucci* than *Nadel* or *Nugent*. Judge Parker and Judge Dezso appear to have little professional or personal interaction. Judge Parker and Judge Dezso preside in separate divisions of the common pleas court; Judge Parker serves in the general division, while Judge Dezso is a domestic-relations-court judge. They do not assign cases to each other, and their divisions are administered separately. In fact, the courts have different addresses, leaving little chance for any contact unless, as Judge Parker explains, they see each other on the street. And there is no allegation in Zarle's affidavit

that Judge Dezso will be called to testify. Similar to the reasoning in *Lucci*, a reasonable person would not question the ability of Judge Parker to rule impartially in Zarle's case based on his attenuated professional relationship with Judge Dezso. Because Judge Parker and Judge Dezso preside in different divisions, and because they do not have any personal relationship, a reasonable person would not question the fairness of the proceedings.

{¶ 9} Regretfully, threats against judges are not uncommon, but despite these threats, judges continue to administer the law fairly and professionally. As a federal circuit court explained in a similar case, "we must be especially careful not to allow threats of violence to succeed in altering the normal course of litigation. To do otherwise would be destructive of the independence of the judiciary * * *." *Clemens v. United States Dist. Court for the Cent. Dist. of California*, 428 F.3d 1175, 1180 (9th Cir.2005).

{¶ 10} In conclusion, "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

{¶ 11} For the reasons stated above, the affidavit of disqualification is denied. The case may proceed before Judge Parker.

————————————