IN RE DISQUALIFICATION OF WINKLER.

STATE *v.* JOHNSON.

[Cite as *In re Disqualification of Winkler*,
142 Ohio St.3d 71, 2014-Ohio-5877.]

(No. 14–AP–085—Decided October 30, 2014.)

O'CONNOR, C.J.

{¶ 1} Hal R. Arenstein, counsel for defendant, has filed an affidavit with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Robert C. Winkler from presiding over any further proceedings in case No. B1403142 in the Court of Common Pleas of Hamilton County.

{¶ 2} Defendant has been charged with felonious assault and other crimes, and Arenstein claims that the alleged victim of the felonious assault is the son of Hamilton County Prosecuting Attorney Joseph T. Deters. Arenstein argues that Judge Winkler's participation in the case creates an appearance of impropriety because attorneys in Deters's office appear before Judge Winkler on a daily basis and because prior to Judge Winkler taking the bench, he was employed as an assistant county prosecutor under Deters.

{¶ 3} Judge Winkler has responded in writing to the affidavit, averring that while Deters's son may be a witness in the underlying case, that fact has no bearing on his impartiality. Judge Winkler acknowledges that he was employed as an assistant county prosecutor under Deters from 1992 to 1997, but Judge Winkler further explains that he was hired by Deters's predecessor and that he never served in a supervisory or policymaking capacity under Deters. Judge Winkler also states that in 1997 he resigned from the prosecutor's office and entered private practice, where he worked until taking judicial office in 2002.

{¶ 4} For the reasons explained below, no basis has been established to order the disqualification of Judge Winkler.

{¶ 5} "The proper test for determining whether a judge's participation in a case presents an appearance of impropriety is * * * an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of*

*Lewis,* 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8. Thus, disqualification is appropriate when a professional relationship between a judge and an individual involved in a proceeding—such as a witness or the alleged victim—could suggest to a reasonable person the existence of prejudice. For example, in *In re Disqualification of Nugent,* 47 Ohio St.3d 601, 546 N.E.2d 927 (1987), the chief justice disqualified all judges of a county common pleas court from hearing a case charging a defendant with murdering the nephew of another judge on that court. In addition, the alleged victim's mother was a court employee, and the victim's father served as an investigator for the county prosecutor's office. Similarly, in *In re Disqualification of Nadel,* 47 Ohio St.3d 604, 546 N.E.2d 926 (1989), the chief justice disqualified all judges of a county common pleas court from hearing a case of a defendant charged with assaulting and kidnapping the wife and infant daughter of another judge on that court. In these cases, an objective observer might have reasonably questioned the judges' impartiality based on the close professional ties with witnesses or the alleged victims, and therefore disqualification was necessary to avoid any appearance of impropriety.

{¶ 6} However, when the professional relationship between a judge and a witness or an alleged victim is not particularly close, there is less reason to question the judge's impartiality. Under these circumstances, disqualification requests based on a professional connection alone are generally denied. *See, e.g., In re Disqualification of Parker,* 135 Ohio St.3d 1216, 2012-Ohio-6307, 985 N.E.2d 497 (disqualification request denied in a case charging the defendant with intimidation of a judge serving on another division in the county common pleas court with whom the assigned judge had little professional or personal interaction); *In re Disqualification of Coss,* 134 Ohio St.3d 1207, 2011-Ohio-7079, 981 N.E.2d 871 (disqualification request denied in a case charging the defendant with robbing a store owned by a county commissioner whose sister was the clerk on duty at the time of the robbery); *In re Disqualification of Lucci,* 117 Ohio St.3d 1242, 2006-Ohio-7230, 884 N.E.2d 1093 (disqualification request denied in a case charging the defendant with plotting the murder of a municipal court judge, city prosecutor, city mayor, and police chief of a village); *In re Disqualification of Solovan,* 100 Ohio St.3d 1238, 2003-Ohio-5483, 798 N.E.2d 21 (disqualification request denied in a case charging the defendant with criminal acts against deputies in the county sheriff's office, who also provided security for the courthouse and served as bailiffs to the judges).

{¶ 7} Here, Arenstein has not offered convincing evidence of a significant professional or personal relationship between Judge Winkler and Deters or his son that would suggest that Judge Winkler could be tempted to depart from his expected judicial neutrality. Arenstein argues only that assistant prosecutors appear before Judge Winkler on a daily basis and that Judge Winkler worked for Deters 17 years ago. Based on this record, no reasonable and objective observer

would question the judge's impartiality. "The statutory right to seek disqualification of a judge is an extraordinary remedy. * * * A judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Those presumptions have not been overcome in this case.

{¶ 8} For the reasons stated above, the affidavit of disqualification is denied. The case may proceed before Judge Winkler.